# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| JILL NOBLE, on behalf of herself and all others similarly situated, <br><br>         Plaintiffs, <br><br>     v. <br><br> RIGHTCHOICE MANAGED CARE, INC., <br> HMO MISSOURI, INC., <br>     and <br> HEALTHY ALLIANCE LIFE INSURANCE COMPANY, <br>         Defendants. | Case No. 15-cv-626 |

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1331, 1332, 1441, 1446 and 1453, defendants RightCHOICE Managed Care, Inc., HMO Missouri, Inc., and Healthy Alliance Life Insurance Company (together, the "Anthem Defendants"), by their undersigned counsel, hereby remove this action from the Circuit Court of the County of St. Louis, Missouri to the United States District Court for the Eastern District of Missouri, Eastern Division.  In support thereof, the Anthem Defendants state as follows:

1. On February 18, 2015, plaintiff Jill Noble ("Plaintiff") filed this putative class action in the Circuit Court of the County of St. Louis, Missouri, in a case captioned *Jill Noble, on behalf of herself and all others similarly situated v. RightChoice Managed Care, Inc., HMO Missouri, Inc., and Healthy Alliance Life Insurance Company*, Case No. 15SL–CC00592 (the "State Court Action").  Pursuant to 28 U.S.C. § 1446(a) and Local Rule 2.03, the Anthem Defendants attach a true and correct copy of all pleadings, process, and orders either served on

2075508.2

the Anthem Defendants or presently on file in the State Court as Exhibit 1.  The original filing form and civil cover sheet are attached as Exhibits 2 and 3, respectively.

2. On March 17, 2015, a first amended petition was served in the State Court Action on the Anthem Defendants.  (The Anthem Defendants never were served with a copy of the original petition; they only were served with the First Amended Petition.)

3. On April 14, 2015, Plaintiff filed a Second Amended Petition ("SAP") in the State Court Action, adding three new named plaintiffs.

4. The State Court Action arises from a cyber attack alleged to have compromised Plaintiffs' personal information.  Plaintiffs assert that "Defendants did not comply with, and therefore violated, [the Health Insurance Portability and Accountability Act ('HIPAA')] and HITECH Act."  SAP ¶ 42.  Their specific claims include: (1) unjust enrichment; (2) money had and received; (3) breach of express and implied contract based on a failure to comply with regulations promulgated pursuant to HIPAA, *see* 45 C.F.R. § 164.310; (4) negligence; (5) wantonness; (6) negligence *per se* based on "violations" of HIPAA; (7) breach of the covenant of good faith and fair dealing; (8) invasion of privacy; (9) vicarious liability; and (10) bailment.  *See* SAP ¶¶ 63–144.

5. Plaintiffs propose a class including certain "current or former customers of RightChoice Managed Care, Inc., HMO Missouri, Inc., Healthy Alliance Life Insurance Company, Inc., or any of their subsidiaries and/or affiliates, or whose PHI was submitted to any of these entities, and whose PHI was wrongfully accessed, copied, or transferred between the time period of January 1, 2014 and February 5, 2015."  *Id.* at ¶ 54.  Accordingly, the purported class includes individuals who purchased insurance from the Anthem Defendants on the federal exchange established pursuant to the Patient Protection and Affordable Care Act, Pub. L.

2

No. 111–148, Mar. 23, 2010, 124 Stat. 119, who obtained health insurance coverage from their employers pursuant to plans governed by the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001, *et seq.*, and who receive health care coverage under plans governed by other federal and state regulations.

## BACKGROUND

6. Defendants are affiliates of Anthem, Inc., an Indiana Corporation that is one of the largest health benefits companies in the United States. Through its affiliated health plans throughout the country from Maine to California, Wisconsin to Georgia, and another ten states in between, Anthem delivers health benefit products and plans to tens of millions of members.

7. On February 4, 2015, Anthem, announced that cyber attackers had gained unauthorized access to its data systems and obtained personal information relating to current and former members. The Federal Bureau of Investigation is engaged in an active criminal investigation into the incident. Immediately following Anthem's announcement, plaintiffs' attorneys began filing putative class actions against Anthem and its subsidiaries and affiliates across the country.

8. The State Court Action is one of nearly one hundred such lawsuits filed as of April 15, 2015. Ninety of those lawsuits were filed in federal court. Eight (including this case) were filed in state court. Two of those eight state court actions have already been removed to federal court—one to the Eastern District of Missouri. *Sabatino v. HMO Missouri*, No. 4:15–cv–00575 (E.D. Mo. removed Apr. 3, 2015); *Vasquez v. Anthem*, No. 2:15–cv–02055 (C.D. Cal. removed Mar. 19, 2015), and the rest will be soon. The State Court Action asserts claims substantially similar to those in *Sabatino* and *Keeton v. Anthem*, No. 15–cv–00513 (E.D. Mo. filed March 23, 2015), a case originally filed in this Court.

9. The complaints in all of these actions similarly allege that Anthem failed to adequately safeguard its members' confidential information, resulting in unauthorized access of that information. *See, e.g.*, *Garson v. Anthem, Inc.*, No. 15–cv–0180, Compl. ¶¶ 1–10 (S.D. Ind.); *Pantuso v. Anthem, Inc.*, No. 15–cv–0181, Compl. ¶¶ 1–4 (S.D. Ind.); *Giotta v. Anthem, Inc.*, No. 15–cv–0618, Compl. ¶¶ 1–6 (N.D. Cal.); *McKinley v. Anthem, Inc.*, No. 15–cv–0096, Compl. ¶ 1 (S.D. Ohio); *Schneider v. Anthem, Inc.*, Case MDL No. 2617 Document 111 Filed 03/04/15 Page 8 of 19 5 No. 15–cv–0920, Compl. ¶¶ 1–2 (S.D.N.Y.); *Maric v. Anthem, Inc.*, No. 15–cv–0134, Compl. ¶ 1 (W.D. Ky.); *Nicoll v. Anthem, Inc.*, 15–cv–0704, Compl. ¶¶ 1–5 (E.D.N.Y.). Almost all of the complaints allege further that Anthem failed to adequately disclose the purported lack of safeguards and the intrusion to its members. *See, e.g.*, *Keyser v. Anthem, Inc.*, No. 15–cv–0178, Compl. ¶¶ 2–3 (S.D. Ind.); *Meadows v. Anthem, Inc.*, No. 15–cv–0163, Compl. ¶¶ 2, 10 (S.D. Ind.); *Liu v. Anthem, Inc.*, No. 15–cv–0215, Compl. ¶¶ 1, 4 (C.D. Cal.); *McInnis v. Anthem, Inc.*, No. 15–cv–2577, Compl. ¶ 4 (D. Kan.); *Heaton v. Anthem, Inc.*, No. 15–cv–0656, Compl. ¶¶ 4, 14 (N.D. Cal.); *Petty v. Anthem, Inc.*, No. 15–cv–1177, Compl. ¶ 3 (S.D.N.Y.); *Peterman v. Anthem, Inc.*, No. 15–cv–0250, Compl. ¶ 26 (D. Conn.).

10. On February 11, 2015, the plaintiff in *Weinberger v. Anthem, Inc.*, No. 15–cv–0201 (S.D. Ind.), filed a motion before the Joint Panel on Multidistrict Litigation (JPML) to transfer and centralize these overlapping class actions for consolidated pretrial proceedings in the United States District Court for the Southern District of Indiana, pursuant to 28 U.S.C. § 1407. *See In re Anthem, Inc., Customer Data Security Breach Litig.*, MDL No. 2617. Anthem has filed a response supporting that proposal. More than fifty named plaintiffs have likewise filed briefs urging the JPML to establish an MDL and centralize all of the actions filed against Anthem and its affiliates in one federal court. Significantly, no party in any of the scores of actions filed

against Anthem and its affiliates has argued to the JPML that an MDL should not be established. The JPML will hear argument on this motion at its next hearing on May 28, 2015 in Minneapolis, Minnesota.

## DIVERSITY JURISDICTION UNDER CAFA

11. The Anthem Defendants allege that this Court has jurisdiction over the State Court Action pursuant to the Class Action Fairness Act of 2005 (CAFA).  Congress enacted CAFA "to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014).  Accordingly, CAFA extends a district court's original jurisdiction to any putative class action: (a) involving 100 or more class members; (b) with an amount in controversy exceeding $5 million dollars; and (c) in which any member of the plaintiff class is a citizen of a different country or state than any defendant. *See* 28 U.S.C. § 1332(d).

12. "[A] defendant's notice of removal need include only a plausible allegation" that CAFA's elements are satisfied.  *Dart Cherokee Basin*, 135 S. Ct. at 554; *id.* at 553 (noting that 28 U.S.C. § 1446(a) "tracks the general pleading requirement stated in Rule 8(a)" "by design"). The Anthem Defendants meet that burden here.

13. First, it is undisputed that the proposed class exceeds CAFA's numerical threshold; the Second Amended Petition expressly alleges that the putative class includes more than 1.5 million individuals.  SAP ¶ 57.

14. Second, Defendants allege that the total amount in controversy exceeds $5 million, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(6) (providing for aggregation of individual claims in any class action).  Although Plaintiffs do not plead a specific loss amount, the size of the purported class and Plaintiffs' request for actual and punitive damages and restitution easily satisfies CAFA's amount in controversy requirement.

15. Finally, the State Court Action satisfies CAFA's minimal diversity requirement. The Petition alleges that each of the four named Plaintiffs is a "*resident*" of Missouri. SAP ¶¶ 11–14 (emphasis added). "But it is well established that, "[w]hen it comes to diversity jurisdiction, the words 'resident' and 'citizen' are not interchangeable." *Reece v. Bank of New York Mellon*, 760 F.3d 771, 777 (8th Cir. 2014); *see Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 59 (2d Cir. 2006) (holding that CAFA removal was proper where complaint made reference to a state "resident" and state "customers" without pleading citizenship). In other words, "it is simply incorrect to say" that a plaintiff's "residency establishes [their] citizenship for the purpose of diversity jurisdiction." *Reece*, 760 F.3d at 777. While a person "may be a resident of multiple states in addition to the state of citizenship," citizenship is singular. *Id.* at 778. Because a person may simultaneously be a resident of Missouri and a *citizen* of some other state, Plaintiffs' allegations of residency do not establish that they are in fact citizens of Missouri.

16. The State Court Action thus satisfies each of CAFA's jurisdictional requirements and removal to this Court is proper.

## FEDERAL QUESTION JURISDICTION UNDER ERISA

17. The Anthem Defendants allege further that removal is proper because the Second Amended Petition asserts claims for breach of contract, among other state law claims, that are completely preempted and, thus, displaced, by the exclusive civil enforcement provisions of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§1001, *et seq*.

18. The Second Amended Petition alleges generally that "as a result of Defendants' failure to follow contractually-agreed upon, federally-prescribed, industry-standard security procedures, Plaintiffs and Class Members received a diminished value of the services they paid Defendants to provide." SAP ¶ 7.

6

19. More specifically, Plaintiffs allege that their contracts with the Anthem Defendants for health benefits services included "promises to comply with all HIPAA standards and to ensure Plaintiffs' and Class Members' PHI was protected, secured, kept private, and not disclosed." *Id.* ¶ 81. These promises were allegedly contained in "documents that memorialize the obligations of the parties," *id.* ¶ 79, which "were provided in a manner and during a time where they became *part of the agreement* for services," *id.* ¶ 80 (emphasis added). Plaintiffs further allege that the Anthem Defendants' purported breach of these undertakings "resulted in Defendants providing services to Plaintiffs and Class Members that were of a diminished value," *id.* ¶ 89, and caused Plaintiffs and putative class members to suffer harm. *Id.* ¶ 90; *see also id.* ¶¶ 8(i), 18, 27-28, 53.

20. At least two of the named Plaintiffs (Novak and Hawes) in the State Court Action receive health benefits from the Anthem Defendants under ERISA plans established by their employers, and are seeking to assert claims under those plans.

21. ERISA's civil enforcement provision unambiguously and exclusively encompasses claims like the ones asserted in the Second Amended Petition, which are brought by participants and beneficiaries "to enforce rights under the terms of [their] plan." *See* 29 U.S.C. § 1132(a)(1).

22. It is well settled that "causes of action within the scope of the civil enforcement provisions of [ERISA] are removable to federal court." *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 209 (2004) (quoting *Met. Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987)). Indeed, "[b]ecause of complete preemption, any claim filed by a plan participant for the same relief provided under ERISA's civil enforcement provision, even a claim purportedly raising only a state-law cause of action, arises under federal law and is removable to federal court." *Prudential*

7

*Ins. Co. of Am. v. Nat'l Park Med. Ctr., Inc.*, 413 F.3d 897, 907 (8th Cir. 2005) (emphasis added); *Neumann v. AT&T Communications, Inc.*, 376 F.3d 773, 779 (8th Cir. 2004); *Lyons v. Philip Morris, Inc.*, 225 F.3d 909, 912 (8th Cir. 2000).

23. Because Plaintiffs allege that the Anthem Defendants have breached their obligations under ERISA plan contracts, and Plaintiffs are otherwise seeking to enforce rights under such contracts, this Court has original federal question jurisdiction pursuant to 28 U.S.C. § 1331.

### FEDERAL QUESTION JURISDICTION UNDER HIPAA AND THE HITECH ACT

24. This Court also has an additional, independent basis for federal question jurisdiction:  The gravamen of the Second Amended Petition is that "Defendants did not comply with, and therefore violated, HIPPAA and HITECH Act."  SAP ¶ 42.  Because the petition's nominally state law claims are predicated on violations of a federal statute in an area that implicates substantial federal interests, this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005); 28 U.S.C. § 1331.

25. The Second Amended Petition generally alleges a set of substantive data protection requirements purportedly mandated by HIPAA and the HITECH Act, and claims that the Anthem Defendants' alleged failure to comply with these standards injured Plaintiffs and the putative class members.  *Id.* at ¶ 53.  Plaintiffs claim, moreover, that the Anthem Defendants breached contractual "promises to comply with all HIPAA standards," *id.* at ¶ 81, and that the Anthem Defendants owed duties to Plaintiffs "clearly defined by HIPAA," *id.* at ¶ 95.  Finally, Plaintiffs assert in their claim for negligence *per se* that they and the putative class members "fall within the class of persons HIPAA was intended to protect," *id.* at ¶ 110, and that the harms

alleged in the complaint "are injuries resulting from the type of behavior HIPAA was intended to prevent." *Id.* at ¶ 111.  In other words, Plaintiffs claim they are entitled to relief on the basis of a federal statute.  Their claims thus necessitate the resolution of disputed questions of federal law.

26.   These questions are substantial—and not just to the Anthem Defendants.  The cyber attack that forms the basis of Plaintiff's claims, and which is the subject of an active and ongoing FBI investigation, is just one example of what President Obama has declared "one of the most serious national security challenges we must confront."  Exec. Order No. 13,636, 78 Fed. Reg. 11739 (2013).  Indeed, just last month, the Senate Select Committee on Intelligence passed a bill that would enhance the federal government's cooperation with private companies in an effort to tackle the growing threat of large-scale attacks.  *See* Press Release, Cybersecurity Bill Passes Intel Committee 14–1, Mar. 13, 2015, *available at*: http://goo.gl/KkOU0c (accessed Apr. 8, 2015).

27.   In 2013, the President directed the National Institute for Standards and Technology to partner with public and private entities in developing a voluntary framework for ensuring the integrity of public and private networks.  *See* Exec. Order No. 13,636.  Since releasing the initial framework, NIST has noted concerns among industry participants that HIPAA compliance "does not necessarily mean that information will be kept safe and secure." NIST, Update on the Cybersecurity Framework (Dec. 5, 2014), *available at*: http://goo.gl/XYxBNI (accessed Apr. 8, 2015).  In other words, even the best HIPAA practices might leave networks vulnerable to sophisticated cyber attacks.

28.   The adjudication of Plaintiffs' claims could have far-reaching implications for the architecture of the Nation's cybersecurity defenses.  The issue is not unique to the Anthem Defendants, and it is not confined to Missourians.  On the contrary, the attack on Anthem's

9

systems has national significance, and the company is working with federal authorities to respond.  The State Court Action is no run-of-the-mill privacy claim; absent removal, a state court will decide whether HIPAA compliance represents the metric by which sound information security practices can be judged, and will determine the standard of care HIPAA's rules require.  That decision will define the playing field for Anthem—a company with information systems distributed throughout the country, and tens of millions of members—and for similarly situated companies across the country.  The State Court Action thus presents substantial questions of federal law and policy.

29. Moreover, the federal interest is heightened here because civil discovery poses a serious risk of disrupting or interfering with the FBI's criminal investigation.  A single, federal forum is necessary to preserve the federal government's interest in the integrity of that investigation and to appropriately manage the competing concerns presented by the civil suits and the government's efforts to respond to and prevent major cyber attacks.

30. In sum, how Anthem and similarly situated companies respond to the threat of cyber attacks raises substantial federal questions and implicates a compelling federal interest that "justif[ies] resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."  *Grable*, 545 U.S. at 312.  And deciding Plaintiffs' HIPAA-based claim poses no risk to "any congressionally approved balance of federal and state judicial responsibilities" because no special state interest is implicated here.  *Id.* at 314.  This Court's jurisdiction is therefore proper under 28 U.S.C. § 1331.

**PROCEDURAL REQUIREMENTS FOR REMOVAL**

31. Removal to this Court is proper under the procedural provisions of 28 U.S.C. § 1446:

  a. This Court is the "district court of the United States for the district and division within which [this] action is pending," *id.* at § 1446(a);

  b. The Anthem Defendants' Notice of Removal is timely under 28 U.S.C. § 1446(b) because the amended petition in the State Court Action was served on Defendants on March 17, 2015 (*see* Ex. 1), and this Notice is being filed within thirty days of service; and

  c. The Anthem Defendants will provide copies of this Notice to counsel of record for Plaintiff, and will file a copy with the Circuit Court for the County of St. Louis, Missouri, as required by 28 U.S.C. § 1446(d).

32. Therefore, the Anthem Defendants respectfully submit that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1332, 1441, 1446, and 1453.

33. Nothing in this Notice of Removal constitutes a waiver or admission of any allegation, defense, argument, or principle of equity available to the Anthem Defendants.

WHEREFORE, the above-described action now pending against the Anthem Defendants in the Circuit Court for the County of St. Louis, Missouri, is removed to the United States District Court for the Eastern District of Missouri, Eastern Division.

Dated: April 15, 2015       Respectfully submitted,

              /s/  Neal F. Perryman
              Neal F. Perryman, 43057MO
              Ronald A. Norwood, 33841MO
              David W. Gearhart, 50292MO
              LEWIS RICE, LLC
              600 Washington Avenue, Suite 2500
              St. Louis, Missouri 63101-1311
              314.444.7661 (direct)
              314.612.7661 (fax)

              Attorneys *for Defendants*

Craig A. Hoover
E. Desmond Hogan
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004
Tel:  (202) 637-5600
Fax:  (202) 637-5910
craig.hoover@hoganlovells.com
desmond.hogan@hoganlovells.com

Michael M. Maddigan
HOGAN LOVELLS US LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Tel: (310) 785-4600
Fax: (310) 785-4601
michael.maddigan@hoganlovells.com

*Of Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that, on April 15, 2015, a copy of the above and foregoing was served via e-mail and U.S. mail, first-class postage prepaid, addressed to the following counsel of record for Plaintiffs:

Frankie J. Forbes
Michael J. Fleming
Quentin M. Templeton
Forbes Law Group
6900 College Blvd., Suite 840
Overland Park, Kansas 66211
fforbes@forbeslawgroup.com
mflemming@forbeslawgroup.com
qtempleton@forbeslawgroup.com

William Skepnek
Skepnek Law Firm
1 Westwood
Lawrence, Kansas 66044
wskepnek@skepneklaw.com

Brennan P. Fagan
Fagan Emert & Davis, LLC
730 New Hampshire, Suite 210
Lawrence, Kansas 66044
bfagan@fed-firm.com

/s/  Neal F. Perryman